DAWKINS, J.
Plaintiff brought this suit to recover certain funds, notes, credits, etc., alleged to have been held on deposit by defendant, for an accounting on the collection of certain collaterals, and also for damages for the alleged failure to honor a check drawn upon his • account with the bank, by which he claims his credit and business affairs were injured to the extent of several thousand dollars.
For answer, defendant set up at lengt¿, as did the petition, the alleged relations and transactions between the parties, admitted that it had refused to honor plaintiff’s check, but averred that it had a legal right to do so, and reconvened for a large amount which it claimed plaintiff was due it upon note.
There was judgment in favor of plaintiff for the sum of $1,000 as damages, and for defendant in reconvention' in ■ the sum of $2,067.23, with 8 per cent, per annum interest from October 7, 1913, until paid, less credits as follows: $63-80 October 17, 1913, $52.70
November 11, 1913, $148.77 December 29, 1913, $125 January 2, 1914, and $100 January 7, 1914, with recognition of a pledge upon a certain mortgage note for $3,500, and reserving to plaintiff the right to demand an accounting for all other notes and property claimed as belonging to him and held by the defendant bank, the latter being condemned to pay costs.
Defendant appealed and plaintiff answered, praying that the amount allowed as damages be increased to the sum originally demanded; and, further, that the mortgage note for $3,500 be decreed null and void as having been given without consideration.
Opinion.
It will thus be seen that, in so far as the plaintiff is concerned, the only modification of the judgment prayed for is that the sum allowed as damages be increased and that the mortgage note be.canceled for want of consideration; and should we find that the said note did have a valid consideration, either at the time it was given or because of *965 subsequent events, we can make no change in plaintiff’s favor in the judgment in so far as it adjusts the accounts between the parties, for the reason that same has not been prayed for; and we will have to confine our investigation to the alleged errors as against defendant, who brings the case before us, as to wit, upon a broad appeal.
Prior to 1913, plaintiff had, for several years, been engaged in a mercantile business in Washington parish, and in 1910, having become involved financially, obtained a respite, under the state laws, by which he paid his creditors one-third of his indebtedness cash, and obtained an extension of one and two years upon the balance. The second installment became due and he was unable to meet it; but, after some negotiations with an association representing nearly all his creditors, it was agreed that, if he would pay this second installment in full, the third and last would be waived or canceled. With this end in view, negotiations were opened with defendant bank for a loan to consummate that purpose.
The defendant agreed to lend the money, some $7,500, upon mortgages to be secured by property of plaintiff situated in both Washington and Tangipahoa parishes, subject to approval of titles by its counsel' and on condition that certain indebtedness due it would also be taken up but of the proceeds of the loan. An examination of titles disclosed features objectionable to defendant’s counsel, as to the property in Washington parish, and that a blanket mortgage for some $20,000 in favor of plaintiff’s general creditors under the respite had not been recorded in Tangipahoa parish. A mortgage for $3,500 was executed upon the property in the latter parish securing a note for that amount, which was placed in the hands of the bank to await completion of an acceptable mortgage on the property in Washington parish for $4,000, when the settlement of plaintiff with his creditors was to be concluded.
Considerable delay intervened, and certain indebtedness owing to defendant by plaintiff prior to opening negotiations for the $7,500 loan having become more than 12 months past due, it wrote him under date of October 7, 1913, the following letter:
“Mr. E. W. Ott, Mt. Hermon, La. — Dear Sir: On account of your note of $2,814.00 being more than twelve months past due, we are compelled under the law to charge same off, so this made it necessary to discount the mortgage note of $3,500.00, and enter same upon our books which after deducting the note for $250.00 and the one for $2,814.00 together with interest, leaves a balance of $11.00 to be placed to your special account and you will find inclosed herewith a complete statement of the interest together with the two canceled notes and some collateral notes that are of no value to- us, which you may desire to push for collection. Collateral notes returned as follows: [Then appears a description of some six notes returned.]
“This is all the collateral held by us for your account with the exception of the Eorrest note of $52.70 anil three shares of Farmers' Bank stock.
“We hope to hear from the Washington parish matter soon so as we can help you .out in the matter of the New Orleans Credit Men’s Association and hoping this is satisfactory, I am,
“Yours very truly,
“W. K. Amacker, Cashier.”
To this action plaintiff took no exception, and by his conduct, we think, must be held to have acquiesced therein. Prior to writing the letter above quoted, defendant had written plaintiff on September 26, 1913, that it would discount the mortgage note and apply the proceeds as it did and requesting that it be advised if this was sátisfaetory. In reply, plaintiff suggested that—
“We had better wait a few days before applying the Tangipahoa deed (meaning mortgage note) to my account.”
Then the letter quoted informing Ott of the note’s disposition, was written, which he *967 is shown to have received with a deposit siip and statement covering the matter without objection; and on March 5, 1914, some five months later, he wrote defendant calling attention to the fact that all of his prior indebtedness had been taken up by the discounting of this mortgage note, with the result that all collaterals for- the old debt were réleased. Hence he must be held to have ratified the act of the bank to that extent, and the note for $3,500 thereby became a valid and binding obligation in favor of defendant. It follows that to the extent the answer to the appeal asks the annulment of the mortgage and- note for want of consideration, the same must be denied as untenable.
The only remaining relief sought by plaintiff, appellee, is the one of damages for the dishonoring of his check.
-Having found that the bank, with plaintiff’s approval,, discounted the mortgage note and with its proceeds took up his prior indebtedness, without any agreement for the further holding of his collaterals or funds, express or implied, the result was that all such property became immediately vested un-. conditionally in plaintiff, and defendant was bound, upon demand, to pay or deliver same to him. It had on deposit in a'special account in his favor more than the amount of the cheek drawn and dishonored, and, while this had been so placed from the collection of collaterals pledged to secure the old debt, the latter had been taken- up by the discounting of the mortgage note. Until this was done, both by mutual understanding and legally, the funds in the special account were due to be applied to what he owed the bank. However, when the bank, discounted the mortgage note and took up the old indebtedness, it no longer had any lawful claim upon .the fund in that account and should have honored plaintiff’s check. This it did not do, the check w,ent to protest, and the bank thereby became liable for such damages as were actually caused by the dishonor. See R. C. L. vol. 5, p. 545 et seq, § 70, verbo “Checks,” and authorities in -footnotes.
In this case, the record shows that the plaintiff’s credit had been so impaired by his seeking a respite and failing to meet the deferred payments thereunder, as well as by the mortgaging of his real property and because of the generally involved condition of his affairs, that the dishonoring of his check occasioned little or no damage. However, he is entitled to nominal damages for the violation of his legal rights, gee authorities above cited. In this instance, we think the circumstances justify our fixing the damages in the sum 'of $1 and the casting of costs of the suit upon defendant.
The Reconventional Demand.
As heretofore stated, we .are powerless to modify the judgment appealed from, in so far as it balances the claims and counterclaims of and adjusts accounts between the parties, except upon the items of credit and debit allowed adversely to defendant and from which it appeals. Defendant complains of the judgment below, as we take it from the brief, in five particulars, to wit:
(1) That it was not allowed credit for the sum of $250 out of the proceeds of the $3,500 mortgage note, applied to the payment of the Norman D. Ott note;
(2) That is was not credited with a cheek for $60 drawn by plaintiff against .the special account October 28, 1913;
(3) That credit for a check of $100 similarly drawn March 10,1914, was not allowed;
(4) That interest on the amounts deposited in the special account was figured against defendant at 8 per cent, instead of 4 percent. ; and
(5) That it should recover 10 per cent, attorney’s fees stipulated in the mortgage note sued upon in reconvention.
1. As we have heretofore said, plain *969 tiff acquiesced in the disposition of the proceeds of the mortgage note, including the taking up of the N. D. Ott note of $250, and defendant should be credited therewith, with the right to plaintiff to have that note returned to him. The court below evidently based its judgment upon the audit of the account of plaintiff with defendant found on page 105 of the transcript made by the experts Kay and Oartright appointed for that purpose, and this did not take into consideration the N. D. Ott note. This was entirely consistent with the theory of the judgment below, which treated the $3,500 note as additional security for the old debt and not as having been discounted.
2,3. The lower court also failed to charge plaintiff and credit defendant with a check for $60 drawn against the special account October 28, 1913, as well as a second check for $100 drawn against the same account March 10, 1914. This doubtless was likewise due to the fact that the court based its judgment upon the audit which did not include these checks, but which were proper charges against plaintiff in favor of defendant.
4. With regard to the complaint that 8 per cent, has been allowed upon the special account, we do not think the same is well founded; for while the items arising from collections of collaterals were, for convenience, placed in a special account, they were in reality payments upon the principal debt, and in figuring partial payments the auditor charged the plaintiff with 8 per cent, upon the full amount of his note to the date it was taken up, October 7, 1913, notwithstanding the payments arising from collections placed in' the special account, and simply charged the defendant bank with this interest at the same rate from the date of each collection or payment. Defendant cannot complain for the reason that it had the use of the money just the same as if it had been received and credited to its own funds, and the effect of the judgment below as well as the one which we shall render herein is to hold those amounts as payments or offsets to the debt due the bank, either upon the old debt or the note of $3,500.
5. Having found that the note for $3,500 was discounted and that it took the place of the old debt, it follows that defendant was entitled to recover attorney’s fees as therein stipulated upon the amount found to be due in reconvention.
For the reasons assigned, the judgment appealed from is amended as follows: The amount allowed plaintiff as damages for the dishonoring of his check is reduced to the sum of $1; the judgment in defendant’s favor in re-convention is increased to the sum of $2,-477.23, with interest at the rate allowed below upon $2,317.23 from October 7,1913, and a like rate of interest upon the sums of $60 from October 28, 1913, and $100 from March 10, 1914, all until paid, less credits and interest thereon as allowed in said judgment; and that there be further judgment in defendant’s favor for 10 per cent, of the principal and interest so' found to be due as attorney’s fees, with recognition of the lien and privilege to secure all of said indebtedness upon the property situated in Tangipahoa parish and described in the act of mortgage by plaintiff in favor of defendant dated June 30, 1913, recorded in said parish, and which is hereby declared executory. In all other respects, the judgment appealed from is affirmed, and defendant is to pay all costs.
O’NIELL, J., being absent from the state, takes no part in the decision of this case.